**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————————
                                :

SEAN P. MCGOVERN,            :

                                :

           Plaintiff,        :

     v.                    :     CIVIL ACTION NO. 98-5186 (JLL)

                                :

CITY OF JERSEY CITY, ET AL.,   :    **OPINION**

                                :

           Defendants.     :

———————————————————————:

        Plaintiff, Sean McGovern, filed the instant lawsuit against the Park Tavern, the City of Jersey City, Hudson County, and various agencies and employees of Jersey City and Hudson County on November 16, 1998.[1]  Currently before the Court is a motion for summary judgment filed by Defendants, Hudson County, the Hudson County Sheriff's Office (the "Sheriff's Office") and Hudson County Sheriff Joseph Cassidy (collectively, the "Hudson County Defendants" or the "Defendants") on February 28, 2007.

        Defendants assert that they are entitled to summary judgment on Plaintiff's remaining claims against them.  Plaintiff's remaining allegations against the Hudson County Defendants are:[2]

---

[1]  The only defendants that currently remain in this case are the City of Jersey City; William Thyne, the Jersey City Chief of Police; Michael Moriarty, the Jersey City Police Director; Hudson County; the Hudson County Sheriff's Office; and Joseph Cassidy, the Hudson County Sheriff.  The other defendants sued by Plaintiff were either voluntarily dismissed from the case, dismissed by the Court's January 6, 2006 opinion and order, or settled with Plaintiff in October 2006.

[2]  These references are to the operative complaint, the Third Amended Complaint (the "complaint") filed on February 11, 2003.  In its January 6, 2006 opinion, the Court noted that it is "difficult to ascertain precisely what claims are being asserted by Plaintiff against [the Hudson

(1)     Sheriff Cassidy violated 42 U.S.C. § 1983 by infringing upon Plaintiff's First Amendment Petition Clause rights (counts III and XI), engaged in a conspiracy to violate Plaintiff's First Amendment Petition Clause rights (count XII),[3] and violated the New Jersey Constitution's Petition Clause, Article I, Paragraph 18 (count IV).

(2)     Hudson County and the Sheriff's Office are liable under a theory of municipal liability for the unconstitutional actions of Sheriff Cassidy.

For the following reasons, the Court grants in part and denies in part this summary judgment

motion.

---

County Defendants]."  See Opinion (Jan. 6, 2006) at p. 23.  For example, in this complaint, Plaintiff throws in terms like "constructive discharge" and "hostile work environment" in his counts alleging violations of section 1983 and the New Jersey Constitution.  The Court does not construe the complaint as stating any such claims.

Further, the Hudson County Defendants, in their brief, continue to discuss the validity of a potential First Amendment denial of access to courts claim.  This claim was dismissed by the Court in its January 6, 2006 opinion with respect to the Jersey City Defendants.  See Opinion (Jan. 6, 2006) at pp. 15-16.   It does not appear that there are any substantive allegations that the Hudson County Defendants denied Plaintiff access to courts.  In fact, Plaintiff has pursued the instant federal court lawsuit against these Defendants for several years.  Plaintiff does claim, in paragraph 148 of the complaint, that the Hudson County and Jersey City Defendants conspired to "have his complaint for his assault to not proceed and to be caused to be dismissed."  To the extent this can be construed as some type of denial of access to courts claim, such claim is meritless.  As this Court found in its January 6, 2006 opinion, Plaintiff voluntarily withdrew his municipal court complaint in open court with his counsel present.  See Opinion (Jan. 6, 2006) at p. 9.  Even if this Court were to credit Plaintiff's assertion that the "Court requested that the matters be withdrawn", see Plaintiff's Counter-Statement of Facts at ¶ 21, such only bolsters the finding that the Hudson County Defendants did not cause Plaintiff's criminal complaint to be dismissed.

[3]  Plaintiff's complaint actually contains two references to "count XII" in error.  Plaintiff informed the Court that his section 1983 conspiracy claim appears in the first "count XII."  See Plaintiff's Brief at p. 21 n.1.

2

I.      **Factual and Procedural History**[4]

Plaintiff is a sheriff's officer with the Hudson County Sheriff's Office.  On November 27,

1997, Plaintiff was involved in an altercation with various members of the Jersey City Police

Department ("JCPD") outside the Park Tavern in Jersey City, New Jersey.  One of the Jersey

City police officers involved in this incident was Patricia Cassidy, Sheriff Cassidy's daughter.

Another officer involved in this incident, Richard Garrison, had previously dated Patricia

Cassidy, and at one time, lived with both Patricia Cassidy and Sheriff Cassidy.

Plaintiff claims that Sheriff Cassidy retaliated against him for filing petitions protected by

the First Amendment.  Specifically, Plaintiff alleges that Sheriff Cassidy retaliated against him

by:

(1)     Terminating his participation in the employee pension plan, see Third
        Amended Complaint at ¶¶ 126-31;

(2)     Failing to provide Plaintiff with the requisite wage parity pay, see Third
        Amended Complaint at ¶¶ 132-35;

(3)     Transferring Plaintiff from his post at Central Judicial Processing ("CJP") on
        two occasions, when individuals involved in the Park Tavern incident were
        brought to this unit for arraignment, see Third Amended Complaint at  ¶ 139;

(4)     Refusing to transfer Plaintiff from his post at CJP when he made a verbal
        request to be transferred from this unit, see Third Amended Complaint at
        ¶ 139;

(5)     Subjecting his work to increased supervision from the Internal Affairs
        Bureau, see Third Amended Complaint at ¶ 139;

(6)     Forcing Plaintiff to qualify for the use of his firearm in the presence of
        individuals involved in the Park Tavern incident, see Third Amended

---

[4]  The factual history underlying this dispute is well-known to the parties and was
discussed at length in the Court's January 6, 2006 opinion.  Thus, the Court only provides a brief
summary of the relevant facts in the instant opinion.

<u>Complaint</u> at ¶ 152;

(7)    Denying Plaintiff the opportunity for off-duty work through the Sheriff's Department, <u>see</u> <u>Third Amended Complaint</u> at ¶¶ 136-37;

(8)    Denying Plaintiff the opportunity for overtime work, <u>see</u> <u>Third Amended Complaint</u> at ¶¶ 136-37; and

(9)    Calling Plaintiff a "rat" and "piece of shit" and insinuating that he was not wanted in the Sheriff's Office, <u>see</u> <u>Third Amended Complaint</u> at ¶¶ 138, 141.[5]

Although this Court issued an opinion on January 6, 2006, addressing various motions for summary judgment previously filed by the parties in this matter, and specifically dismissing Plaintiff's First Amendment speech claims against the Hudson County Defendants, <u>see</u> <u>Opinion</u> (Jan. 6, 2006) at p. 24, the Court refused to address Plaintiff's Petition Clause claim at that time because the Hudson County Defendants did not brief that issue, <u>see</u> <u>id.</u> at p. 24 n.8.

The Hudson County Defendants subsequently filed a motion for reconsideration, asking the Court to consider the merits of the Petition Clause claim.  Defendants argued that they briefed this claim in their previous summary judgment papers and that, in any event, Plaintiff failed to state a Petition Clause claim his complaint.  The Court denied this motion on May 2, 2006, stating that Defendants did not brief the Petition Clause issue and that even if the Court were to consider such, Plaintiff stated a Petition Clause claim.  <u>See</u> Opinion (May 1, 2006) at pp. 4-6.

On July 18, 2006, Defendants filed another motion for summary judgment addressing the

---

[5]  The following allegations have been put forth by Plaintiff in the instant submissions in support of his Petition Clause claim; however, such do not appear in the Third Amended Complaint:  (1) filing a disciplinary charge against Plaintiff for his failure to file a formal report of an incident Plaintiff witnessed between other officers while off-duty at Nicco's restaurant (the charge was later withdrawn); and (2) refusing to promote Plaintiff to the rank of Sergeant.  The Court does not consider these allegations, or any other allegations which do not appear in the Third Amended Complaint, to be a basis of Plaintiff's Petition Clause claim.

Petition Clause claim.  Magistrate Judge Ronald J. Hedges entered an order striking the motion

because it was filed in violation of a discovery order and without the consent of the Court.

Defendants appealed this decision to the undersigned.  The Court affirmed Judge Hedges's

decision on February 1, 2007, but allowed Defendants to file another motion for summary

judgment on the Petition Clause issue, noting that it "appears to be the only remaining claim

against [the Hudson County Defendants] in this litigation."  See Opinion (Feb. 1, 2007 ) at p. 3.

The instant motion, Defendants' second summary judgment motion, followed.[6]

## II.    Standard of Review

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[6]  Plaintiff asks the Court to refuse to consider Defendants' arguments that Sheriff
Cassidy is entitled to qualified immunity; that Hudson County and the Sheriff's Office are not
liable under a theory of municipal liability; and that Plaintiff has failed to establish a conspiracy
to violate section 1983 because such is outside the scope of the Court's February 1, 2007 opinion
and order.

The Court denies Plaintiff's request and will consider each of these issues in the instant
opinion.  In its February 1, 2007 opinion and order, the Court permitted the Hudson County
Defendants to file a renewed motion for summary judgment on the Petition Clause claim.
Although the Court referred to the "Petition Clause claim" in its opinion, technically, Plaintiff
bases this claim on violations of both the United States Constitution and the New Jersey
Constitution.  The parties give the Court no reason to analyze these claims under different
standards and thus, they have been grouped together.  Cf. San Filipo v. Bongiovanni, 30 F.3d
424, 430-46 (3d Cir. 1994) (noting that plaintiff claimed that his Petition Clause rights were
violated under both the United States and New Jersey Constitutions and not adopting a separate
analysis for such claims).  Qualified immunity is Sheriff Cassidy's defense to a Petition Clause
claim.  Municipal liability is the manner in which Hudson County and the Sheriff's Office can be
held liable for a Petition Clause violation by Sheriff Cassidy.  Further, the conspiracy claim
which remains is a conspiracy to violate Plaintiff's Petition Clause rights.  Thus, these issues are
all components of Plaintiff's Petition Clause claim and will be considered by the Court.

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).[7]

## III.   Legal Discussion

## A.   Section 1983 Petition Clause Claim

Plaintiff alleges a claim against Sheriff Cassidy, pursuant to 42 U.S.C. § 1983, for

_____

[7] The Court must point out how difficult is was to sift through the parties factual allegations in this case. The following factual summaries were submitted to the Court: Defendants' Statement of Material Facts (which spans 5 pages); Plaintiff's Counter-Statement of Facts in Opposition to Defendants' Motion for Summary Judgment (which spans 18 pages); Plaintiff's Response to Defendants' Statement of Material Facts (which spans 9 pages); Defendants' Reply to Plaintiff's Comments on the Statement of Facts (which spans 25 pages). No attempt was made to submit a joint statement of undisputed facts. Further, these statements of fact included, at times, facts that were not even relevant to the instant motion. The parties' respective briefs were similarly of little aid to the Court in adjudicating this motion.

violating his First Amendment rights under the Petition Clause.  Section 1983 states in relevant

part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the United
> States or other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other proper proceeding for redress
> . . . .

42 U.S.C. § 1983.  To establish a violation of section 1983, Plaintiff must establish (1) that he

was deprived of rights, privileges, or immunities secured by the Constitution or laws of the

United States; and (2) that the alleged deprivation was committed under color of state law.[8]  See,

e.g., 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999);

D'Aurizio v. Palisades Park, 963 F.Supp. 378, 383 (D.N.J. 1997).   Thus, section 1983 is not a

source of substantive rights, but provides a vehicle for vindicating the violation of other federal

rights.  See, e.g., Graham v. Connor, 490 U.S. 386, 393-94 (1989).

In this case, Plaintiff alleges that Defendants violated his First Amendment rights under

the Petition Clause.  See U.S. Const. Amend. I ("Congress shall make no law . . . abridging . . .

the right of the people . . . to petition the Government for a redress of grievances.").[9]  When one

files a petition, he is "addressing government and asking government to fix what, allegedly,

government has broken or has failed in its duty to repair."  San Filippo v. Bongiovanni, 30 F.3d

---

[8]  The "under color of state law" element of section 1983 is similar to the state action
requirement of the Fourteenth Amendment in that it excludes merely private conduct from the
parameters of section 1983.  See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50
(1999).  This element in not in dispute.

[9]  For a history of the Petition Clause, see Foraker v. Chaffinch, —F.3d—, 2007 WL
2445561, at *3-4 (3d Cir. 2007).

424, 442 (3d Cir. 1994).  Lawsuits, workers compensation claims, and grievance procedures established under a collective bargaining agreement are all examples of formal petitions, which are protected under the Petition Clause.  See Foraker v. Chaffinch, —F.3d—, 2007 WL 2445561, at *4 (3d Cir. 2007); Hill v. City of Scranton, 411 F.3d 118, 126 (3d Cir. 2005); San Filippo, 30 F.3d at 439-40, 440 n.18, & 442-43.  Furthermore, the Third Circuit has held that there is no public concern requirement under the Petition Clause—the Petition Clause protects public employees addressing matters of both public and private concern.  See San Filippo, 30 F.3d at 440-42**.**

The Third Circuit applies a three-part test to assess a public employee's claim of retaliation for having engaged in an activity protected by the First Amendment.  See San Filippo, 30 F.3d at 430-31; see also Hill, 411 F.3d at 125 ("We follow a well-established three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment.").  First, the plaintiff must show that he engaged in protected activity.   See, e.g., Hill, 411 F.3d at 125; San Filippo, 30 F.3d at 430-31  Second, the plaintiff must show that his protected activity was a substantial factor in motivating the alleged retaliation.   See, e.g., Hill, 411 F.3d at 125; San Filippo, 30 F.3d at 430-31.  This purported retaliation cannot be trivial or de minimus and must be "sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights."  See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006).  If the plaintiff makes these showings, a defendant may nonetheless defeat the plaintiff's claim if the defendant establishes that the same adverse employment action would have taken place even in the absence of the protected conduct.  See, e.g., Hill, 411 F.3d at 125; San Filippo, 30 F.3d at 430-31.

It is undisputed that Plaintiff engaged in activity protected by the Petition Clause. Plaintiff claims that Defendant retaliated against him for filing the instant federal court lawsuit on November 16, 1998, see Third Amended Complaint at ¶¶ 125, 135, and for filing a municipal court criminal complaint for aggravated assault (which was later downgraded to simple assault) against Richard Garrison on March 9, 1998, see id. at ¶¶ 148-49, which Plaintiff later voluntarily withdrew in open court with his attorney present.[10]

To survive Defendants' motion for summary judgment, however, Plaintiff must also show that this protected activity was a substantial factor in motivating the alleged retaliatory acts. Even if Plaintiff makes this showing, as indicated above, Defendants can defeat the Petition

---

[10]  In his complaint, Plaintiff also references a "report" that he made to unspecified JCPD officials at some unspecified time after the Park Tavern incident.  See Third Amended Complaint at ¶ 142 ("Said types of actions noted in the aforesaid Paragraphs of this Count, began after the report was made by the Plaintiff to the Defendant Jersey City Police officials and to the other investigatory agencies both within and without the Sheriff's Office . . .").  The Court is uncertain whether Plaintiff was alleging that this "report" was a protected petition.  Even if this was Plaintiff's intention, it is unclear from the complaint which report he was referring to, when such report was made, and who such report was made to.  The Court should not have to speculate as to such details.

Furthermore, Plaintiff alleges other petitioning activities in his brief in opposition to the instant motion which were not set forth in the complaint.  See Plaintiff's Brief at p. 5 (citing to Plaintiff's Counter-Statement of Facts, at ¶¶ 6, 11, 13, 14, 18, 19, 23, 78, 79, 80).  The Court disregards these allegations of purported petitioning activity.  Plaintiff is not permitted to amend his complaint by identifying more petitions in the submissions on the instant motion.

In any event, the Court need not consider whether the report referenced in the complaint, or whether all of Plaintiff's other purported instances of petitioning activity, are protected under the Petition Clause, because it is undisputed that Plaintiff's municipal court criminal complaint and federal court lawsuit are protected petitions.  Defendants do not dispute that all alleged instances of retaliation, with the exception of the termination of Plaintiff's participation in the pension plan, which purportedly occurred before the Park Tavern incident itself, occurred after Plaintiff filed his protected petitions.

Clause claim if they demonstrate that the same purportedly retaliatory action would have taken place in the absence of the protected conduct.  The Court herein evaluates Plaintiff's particular allegations of retaliation against Sheriff Cassidy under these standards.

1.      **Termination of Pension Plan Participation**

Plaintiff claims that Sheriff Cassidy retaliated against him by terminating his participation in the Sheriff's Office pension plan, and thus, interfering with his ability to obtain a pension loan in the spring of 2000.  Denise Hensle, Payroll Supervisor of the Hudson County Department of Finance, states in her certification that Plaintiff was inadvertently terminated from the pension plan in July 1997 when he transferred from his previous position as a juvenile detention officer to the Sheriff's Office.  See Hensle Certification at ¶¶ 4-9.  Plaintiff first contacted Ms. Hensle about his plan termination in May 2000.  Id. at ¶ 4.  Once this was brought to Ms. Hensle's attention, she promptly corrected the mistake.  Id. at ¶ 12.  She informed Plaintiff that "the Sheriff and no one at the Sheriff's Office had anything to do with what occurred."  Id. at ¶ 8.

Plaintiff does not dispute, with anything besides speculation, Ms. Hensle's statement that Plaintiff was inadvertently terminated from the plan.  Further, Plaintiff provides no evidence to refute Ms. Hensle's statement that Plaintiff's termination from the plan occurred before the Park Tavern incident and thus, before Plaintiff filed his criminal complaint and federal court lawsuit. Plaintiff's only basis for believing that the termination occurred after the Park Tavern incident is that he claims he was "informed" by an unidentified person that "the records indicated that I had been terminated from my employment in November of 1997."  See McGovern Certification at ¶ 58.  This assertion is speculative and insufficient to establish a genuine issue of material fact on this issue.  Even if Plaintiff is correct, he provides no evidence that such termination occurred

after November 27, 1997, the date of the Park Tavern incident, let alone after the filing of his protected petitions.  See Brennan v. Norton, 350 F.3d 399, 422 (3d Cir. 2003) ("Absent this chronology or similar circumstances to allow a reasonable fact finder to tie the [adverse employment action] to [plaintiff's] First Amendment activities, the nexus necessary to establish a retaliatory motive is simply lacking.").[11]  Further, Plaintiff provides no evidence to demonstrate that Sheriff Cassidy even knew that Plaintiff's participation in the plan had been terminated, let alone to show that he directed such termination.

Thus, Plaintiff fails to establish that genuine issues of material fact exists as to whether the filing of his protected petitions were a substantial factor in motivating his termination from the pension plan.  Cf. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002) (finding that plaintiff failed to demonstrate that activity protected by the First Amendment was substantial motivating factor in his suspension).  No reasonable jury could conclude that his pension plan termination was the result of unconstitutional retaliation.  Defendants are entitled to summary judgment on Plaintiff's Petition Clause claim based on this particular allegation of retaliation.

## 2.    Failure to give Proper Parity Pay

Plaintiff asserts that Sheriff Cassidy retaliated against him by not giving him the proper parity pay.  Plaintiff alleges that when he transferred to the Sheriff's Office from his prior county employment at a Juvenile Detention Center, his prior service should have been credited and his wages should have been increased by virtue of his prior County base wage.  Defendants admit

---

[11]   The Third Circuit's opinion in Brennan v. Norton, 350 F.3d 399, 422 (3d Cir. 2003), which permeates this Court's legal discussion, was decided in the context of review of the district court's decision on motion for judgment as a matter of law.  The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000).

that Plaintiff was not given the proper parity pay, but claim that such was done inadvertently by Plaintiff's union and not by the Sheriff's Office.

William Schulz, the president of Plaintiff's union, submitted a certification in which he states that the union originally brought a grievance on behalf of thirteen sheriff's officers who did not get the proper parity pay with respect to time they served in previous County jobs.  See Schulz Certification at ¶¶ 2-4.  Apparently, this occurred in December 1999, although this date may be disputed.  Plaintiff and two others were inadvertently omitted by the union.  Id. at ¶¶ 5-6.  Mr. Schulz believed that this omission was due to Plaintiff having been out on medical leave at the time and thus, not in attendance at union meetings on the parity pay grievance issue.  Id. at ¶ 6.  Upon realization of this mistake, the appropriate adjustments were made to Plaintiff's and the other officers' parity pay.  Id. at ¶ 9.

In response, Plaintiff states in his certification that he was "specifically told by an officer of the Union, Fred Harden, that Schultz [sic] had specifically left Lynch[12] and me out of the grievance because he did not want to antagonize the Sheriff by including me as the Sheriff's dislike of me is a matter of common knowledge in the department as is his dislike for Thomas Lynch."  McGovern Certification at ¶ 46.[13]  Even if this Court credits this hearsay statement, see

_____

[12]  Thomas Lynch is another sheriff's officer in Hudson County.  Plaintiff believes that the Sheriff retaliated against Lynch because he was friends with Plaintiff.  McGovern Certification at ¶ 38.  Lynch is not a party to this lawsuit.

[13]  Plaintiff does not submit an affidavit of Mr. Harden to this effect.  In fact, Plaintiff's briefs and statements of fact are replete with hearsay statements where a certification or declaration from the declarant of such statements would have been preferable, especially since this litigation has been going on for ten years.  However, since there is no indication that the declarants of the hearsay statements Plaintiff proffers will be unavailable to testify at trial, the Court will consider such statements in adjudicating this motion.  See Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such

infra note 13, and assumes that Mr. Harden told Plaintiff this information, Plaintiff still fails to

provide any evidence that the Sheriff was responsible for Plaintiff not receiving the proper parity

pay.  In fact, in this statement, Mr. Harden admits that Schulz left Plaintiff out of the grievance.

Thus, regardless of Schultz's reasons for leaving Plaintiff off the grievance, whether such was

inadvertent or not, the union, and not Sheriff Cassidy, was responsible for Plaintiff not receiving

the proper parity pay.  See Brennan, 350 F.3d at 420 (rejecting plaintiff's First Amendment

retaliation claim where "there is nothing other than [plaintiff's] claim of causation" to connect

the protected activity to the purported retaliation) and 423 (finding that plaintiff failed to

demonstrate a First Amendment retaliation claim where he provided "no credible evidence" that

the defendant was responsible for the alleged retaliatory act).

Thus, Plaintiff has not shown that a genuine issue of material fact exists as to whether his

petitions were a substantial motivating factor of this purported retaliation.  The Court grants

summary judgment in favor of Defendants on this claim.

**3.       Transfer from CJP on Two Occasions**

Plaintiff claims that, on two occasions in March and April of 1998, see McGovern

Certification at ¶¶ 19, 29, he was transferred from his normal post at CJP to other another post.

Plaintiff does not dispute that he was only removed from his normal CJP post on these two

---

facts as would be admissible in evidence . . ."); Williams v. Borough of West Chester, 891 F.2d
458, 466 n.12 (3d Cir. 1989) ("hearsay evidence produced in an affidavit opposing summary
judgment may be considered if the out-of-court declarant could later present that evidence
through direct testimony, i.e., 'in a form that would be admissible at trial' "); King v. City of
Philadelphia, No. 02-2845, 66 Fed Appx. 300, 2003 WL 1705967, at *3 (3d Cir. Apr. 1, 2003)
(" '[H]earsay evidence produced in an affidavit opposing summary judgment may be considered
if the out-of-court declarant could later present that evidence through direct testimony . . .' "
(internal quotation omitted)).

occasions, for a limited period of time, while two individuals involved in the Park Tavern incident and in this instant lawsuit were brought to his post for arraignment.  He was immediately returned to his CJP post thereafter.

Plaintiff's First Amendment claim in this regard fails on numerous grounds.  First, these transfers were *de minimus* or trivial, and thus, do not constitute a cognizable constitutional injury.  See, e.g., Brennan, 350 F.3d at 419 (indicating that to establish a First Amendment retaliation claim, the alleged retaliatory acts must be more than *de minimus* or trivial).   Plaintiff was not demoted, his pay and seniority were not affected, he was not transferred to a dangerous or otherwise undesirable post, and he was immediately transferred back to CJP once the arraignments concluded.  Second, even if these two temporary transfers could be considered actionable adverse employment actions, Plaintiff fails to demonstrate that the filing of his petitions, as opposed to Defendants' legitimate concern for the safety of Plaintiff and the individuals being processed at CJP was a substantial motivating factor of the purported retaliation.  Further, even if Plaintiff has shown that the transfers were adverse employment actions, and that such were substantially motivated by Plaintiff's filing of his petitions, Defendants have established that Plaintiff's transfers would have occurred in the absence of the protected conduct.  Even in the absence of his petition filings, Plaintiff would have been removed from his CJP post during the arraignments of these individuals given the history amongst them and Plaintiff's admitted reaction to them, see McGovern Deposition (Jan. 11, 2002) at 132:16 - 133:7.

Thus, the Court grants Defendants' motion for summary judgment on this claim.

14

4. **Verbal Request to be Transferred from CJP**

Interestingly, while Plaintiff faults Sheriff Cassidy for transferring him from CJP on the two occasions discussed above, he also complains that the Sheriff retaliated against him by *not transferring* him from CJP to another post in April 1998 when he verbally requested such a transfer.  The Sheriff told Plaintiff that he needed to put his request in writing.  According to the Sheriff, this was Sheriff's Office policy.  See Cassidy Deposition (Jan. 3, 2002) at 13:16-19.  Plaintiff refused to put his request in writing, claiming that the other sheriff's officers did not need to put such requests in writing.  Since Plaintiff did not put his transfer request in writing, his verbal request for a transfer was not considered and he remained at his CJP post.

Again, the Court finds that Plaintiff has not demonstrated unconstitutional retaliation in this regard.  First, Plaintiff provides no support for his assertion that other employees were not required to put their transfer requests in writing.  See Brennan, 350 F.3d at 421, 423 (holding that plaintiff failed to support First Amendment retaliation claims where he failed to give details of incidents of disparate treatment).  Even assuming Plaintiff is correct, and other employees are not required to put their transfer requests in writing, it was reasonable for Sheriff Cassidy to ask Plaintiff to put his request in writing given his previous complaints of retaliation against the Sheriff's Office for transferring him out of CJP.  If Plaintiff put his complaint in writing and justified his reasons for a transfer, and then had such denied, this claim might have more validity.  However, given the foregoing, the Court finds that Plaintiff has not established that his protected activity was a substantial motivating factor in this purported retaliatory action.

Accordingly, the Court grants summary judgment to Defendants on Plaintiff's Petition Clause claim based on Sheriff Cassidy's refusal to transfer Plaintiff out of CJP.

5.     **Increased Supervision of Plaintiff**

Plaintiff asserts in his complaint that Sheriff Cassidy subjected Plaintiff's work to

increased supervision from the Internal Affairs Bureau, see Third Amended Complaint at ¶ 139.

Plaintiff fails to further elaborate on this allegation in his complaint.  However, in his counter-

statement of material facts, Plaintiff attempts to further explain this allegation, stating:

> Plaintiff had his work heavily scrutinized since late 2003 when an Internal Affairs
> officer was assigned to CJP based on the pretext that the unit required more
> supervision.  However, the presence of an officer from Internal Affairs who had no
> knowledge of the operation of the unit presented more harassment and pressure to
> Plaintiff.

Plaintiff's Counter-Statement of Facts at ¶ 73; see also McGovern Certification at ¶ 32.  Plaintiff

provides no further details about this purported supervision.  Plaintiff does not provide facts

which illustrate that Sheriff Cassidy ordered the increased supervision of Plaintiff, as opposed to

the CJP post as a whole, or indicate *who* was assigned to supervise CJP and the Plaintiff, *how*

*often* such person supervised the post, *how* such person "heavily scrutinized" Plaintiff's work,

and *how* such person harassed and put pressure on Plaintiff.  Further, there is no indication that

this unidentified Internal Affairs officer recommended disciplining Plaintiff in any matter or filed

negative reports with respect to Plaintiff's work.  In sum, Plaintiff fails to show that this

purported increased supervision was the result of his protected activity.  See Brennan, 350 F.3d at

425 (finding that Plaintiff's First Amendment retaliation claim failed because the nexus between

the protected activity and the purported retaliatory act stemmed "only from [plaintiff's]

allegations, rather than the proof that he produced").  After ten years of litigating the instant

lawsuit, Plaintiff needs to provide more than these speculative and baseless assertions to survive

Defendant's summary judgment motion.

The Court grants Defendants' summary judgment motion on this issue.

**6.    Firearm Qualification**

Plaintiff asserts that he was forced to qualify for the use of his firearm in the presence of his attackers from the Park Tavern incident.  However, Plaintiff's allegations in his complaint are directed solely at James Sharrock, the Undersheriff of Hudson County, who has previously been dismissed from this case:

> Among the specific actions engaged in by James Sharrock while employed by the Hudson County Sheriff's Office was to alter the firearm range qualification required of Plaintiff so that he was compelled to attend the Jersey City range along with his assailant Garrison and where Plaintiff was subjected to great hostility from approximately 15-20 Jersey City Police officers attending that qualification.

Third Amended Complaint at ¶ 152.  Plaintiff elaborates on this allegation in his counter-statement of material facts, where he states, citing deposition testimony of Sharrock, that:

> After Defendant Sharrock had been appointed by Defendant Joseph Cassidy to be an Undersheriff, he arranged to have the Jersey City Police Firing Range used for officer firearms qualification rather than the Bayonne Police Department Range.

Plaintiff's Counter Statement of Facts at ¶ 36 (citing Sharrock Deposition (Dec. 10, 2003) at 32:3 - 33:21).  Even if we accept Plaintiff's assertions as true, all Plaintiff has established is that Undersheriff Sharrock changed the policy after he was appointed by Sheriff Cassidy.  Plaintiff fails to allege and provide any evidence that Sheriff Cassidy directed Undersheriff Sharrock to change this policy or that he was in any way involved with changing the site of firearm qualification for Hudson County sheriff's officers.  See Brennan, 350 F.3d at 423 (finding that plaintiff failed to establish nexus between protected activity and retaliatory transfer because he produced "no credible evidence" that the defendant was responsible for the transfer").  Thus, his

17

allegations in this regard against Sheriff Cassidy are based solely on speculation and must be dismissed.

Accordingly, the Court grants summary judgment in favor of Defendant on this Petition Clause allegation.

## 7.   Denial of Off-Duty Work

Plaintiff claims that he was denied the opportunity for off-duty work, i.e., work for private companies which hire and pay sheriff's officers for private security jobs. Plaintiff alleged in his complaint that his opportunity for off-duty work was "severely and significantly reduced," see Third Amended Complaint at ¶ 137. Since the filing of the complaint, this allegation has evolved into a more detailed series of allegations. Plaintiff now claims that he was not assigned off-duty work and that he was forced to stop working an off-duty job at Burlington Coat Factory in retaliation for the exercise of his First Amendment rights.[14]

First, the Plaintiff has failed to establish that his failure to obtain off-duty work was substantially motivated by his protected activity. Defendants provide the certification of Richard Kromitz, a Lieutenant at the Sheriff's Office, who is responsible for assigning off-duty work to the sheriff's officers. See Kromitz Deposition (June 7, 2000) at 21:20 - 22:16. Lieutenant Kromitz certified that officers are required to submit their names for off-duty assignments, and that "Mr. McGovern generally does not submit his name for off-duty jobs." Kromitz Certification at ¶ 4. Plaintiff's deposition testimony does not dispute this and actually indicates

_____

[14] The bases for Plaintiff's claims should have been made clear in the complaint; however, the Court gives Plaintiff the benefit of the doubt on this claim, since he did mention in the complaint that his off-duty work opportunities were "severely and significantly reduced," and addresses its merits.

that he did receive off-duty work:

> Q:    Since January 2002 have you called Lieutenant Kromitz about off duty jobs?
> A:    No.
> Q:    Have you filled out the forms to let him know of your availability for off duty jobs?
> A.    Yes, I did.
> Q:    How many times?
> A:    I believe once or twice, I believe.
> Q:    Do you know when?
> A:    No.
> . . .
> Q:    So you only made him—if I understand your answer, you only made Lieutenant Kromitz aware of your availability for off duty work once or twice since January 2002?
> A:    Yes.
> Q:    You didn't get off duty work pursuant to those one or two requests as part of the conspiracy in this case?
> A:    I don't believe that I did.
> Q:    You didn't get the work?
> A:    I did work the vo-tech.

McGovern Deposition (Dec. 12, 2003) at 137:1-25.  In addition to the foregoing, Plaintiff fails to

provide any evidence to support a finding that he requested and was improperly denied off-duty

work opportunities prior to 2002.  Even if he was denied such opportunities, again, he does not

connect this denial to Sheriff Cassidy.  There are no facts to suggest that Sheriff Cassidy directed

Lieutenant Kromitz to deny Plaintiff off-duty work or otherwise orchestrated the loss of such

opportunities.  See Brennan, 350 F.3d at 423 (finding that plaintiff failed to demonstrate a First

Amendment retaliation claim where he provided "no credible evidence" that the defendant was

responsible for the alleged retaliatory act).

   Second, the Plaintiff fails to establish that Sheriff Cassidy directed or was involved with

Plaintiff's cessation of off-duty employment with the Burlington Coat Factory.  Plaintiff claims

that prior to the Park Tavern incident, he had been working an off-duty security job at Burlington

Coat Factory.  McGovern Certification at ¶ 50.   At some unspecified time after the incident, the

manager of Burlington Coat Factory informed Plaintiff he was no longer needed.  Id.  Plaintiff

fails to connect his termination from this company to Sheriff Cassidy.  See Brennan, 350 F.3d at

424 (indicating that the plaintiff's "myopic view defined everything that happened to him" after

he engaged in protected activity and that he failed to provide sufficient evidence to allow a jury

to conclude that defendants' actions were in fact retaliatory).  Thus, Plaintiff fails to demonstrate

a Petition Clause violation on this basis.

Plaintiff began working at Burlington Coat Factory again, after the Park Tavern incident.

He admits that he obtained this off-duty job at Burlington Coat Factory not through the Sheriff's

Office, but through his co-worker and friend, Thomas Lynch.   See Plaintiff's Counter Statement

of Facts at ¶ 57.  Plaintiff claims that

> [He] stopped working at Burlington Coat Factory after the bailbondsman, one Louis
> Turdo, appeared at the store, followed him around the store, and made a point of
> indicating to Lynch that they were friends of the Sheriff, Joseph Cassidy, and had the
> influence with the Sheriff to have officers moved in that department.

Plaintiff's Counter-Statement of Facts at ¶ 58.  Plaintiff asserts that Louis Turdo appeared at his

off-duty job a "few months after the Plaintiff had notified his department of what may have been

an attempt to bribe Plaintiff by stuffing money into his pocket at a feast in September of 2000."

Plaintiff's Counter-Statement of Facts at ¶ 59.

Again, viewing the facts in the light most favorable to Plaintiff, he fails to connect this

incident with Mr. Turdo to the Sheriff.  Instead, it appears that Plaintiff is claiming that Mr.

Turdo was retaliating against him for notifying the Sheriff's Office of Turdo's attempt to bribe

Plaintiff.  There is no evidence to suggest that Sheriff Cassidy directed Mr. Turdo to go to Plaintiff's off-duty job or that he was in any way involved with this incident.  All Plaintiff provides in this regard is speculation.  <u>See</u> <u>Brennan</u>, 350 F.3d at 425 (stating that the nexus between the protected activity and retaliation "arises only from [plaintiff's] allegations, rather than proof that he produced").

Therefore, no reasonable jury could find that Sheriff Cassidy committed unconstitutional retaliation in this regard.  The Court grants Defendants' motion on this claim.

**8.    <u>Denial of Overtime Opportunities</u>**

Plaintiff claims that Sheriff Cassidy retaliated against him by denying him the opportunity for overtime assignments since his petitions were filed.  He claims that he provided the requisite notice and availability for overtime assignments, but that such was not provided to him. <u>McGovern Certification</u> at ¶ 41.  Sheriff Cassidy admitted in his deposition that he was responsible for overtime policies in the Sheriff's Office.  <u>See</u> <u>Cassidy Deposition</u> (July 30, 2001) at 22:13-24.   Plaintiff states that in June 1998, Sergeant Archibald, a superior officer responsible for assigning overtime, offered overtime to Sheriff's Officer Dave Pelli and then told Plaintiff he could not offer him overtime because "the Sheriff would beat me with a PR-24 if I gave you any overtime."  <u>See</u> <u>Plaintiff's Counter-Statement of Facts</u> at ¶ 42; <u>McGovern Certification</u> at ¶ 42. Further, Sergeant Conti, another supervisor responsible for overtime distribution, told Plaintiff he could not assign him overtime because "the Sheriff told me not to assign you overtime."  <u>See</u> <u>Plaintiff's Counter Statement of Facts</u> at ¶ 43; <u>McGovern Certification</u> at ¶ 42.  According to Plaintiff, once he complained about not being provided overtime, the overtime policies were briefly altered to increase the amount of overtime he was being offered.  <u>See</u> <u>Plaintiff's Counter</u>

Statement of Facts at ¶ 44.  He claims that once he started receiving overtime opportunities in the patrol and detective bureaus, the Sheriff changed the policy again, to retaliate against Plaintiff, by requiring that overtime be assigned first to officers employed by the bureau within which the overtime opportunity exists.  See Plaintiff's Counter Statement of Facts at ¶ 46.  The effect of this policy change, according to Plaintiff, was to reduce his overtime opportunities.

Defendants' response to this claim is that Plaintiff admits that he did not necessarily feel that he was being given less overtime despite feeling that "something was going on"; that Plaintiff admitted that he routinely turns down overtime; and that he earned almost $20,000 per year in overtime in 2002.  See Defendants' Statement of Facts at ¶ 15; McGovern Deposition (Jan. 11. 2002) at 98:6-10; McGovern Deposition (Dec. 12, 2003) at 116:11-21.  Defendants do not explicitly argue that the denial of overtime opportunities to Plaintiff was insufficient to rise to the level of a cognizable *constitutional violation* and thus, the Court presumes that such was sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

The Court finds that genuine issues of material fact exist with respect to this issue.  The parties dispute how much overtime Plaintiff actually earned each year following the Park Tavern incident and the filing of his protected petitions.  For example, Defendants claim Plaintiff earned approximately $20,000.00 in overtime pay in 2002, see Bonner Certification at ¶ 5 & Ex. A, while Plaintiff claims that he earned approximately $6,000.00 in overtime that year, see McGovern Certification at ¶¶ 48-49.  Although, by Plaintiff's calculations, there does not appear to be an apparent discrepancy in the amount of overtime pay Plaintiff earned from 1997 through 2002, such does not mean that Plaintiff was improperly denied overtime opportunities.  Further, unlike with his previous allegations, Plaintiff connects the denial of overtime opportunities to

Sheriff Cassidy because the Sheriff admits that he was responsible for overtime policies and Sergeant Archibald and Lieutenant Conti purportedly told Plaintiff that the Sheriff directed them not to give Plaintiff overtime assignments.  The reason for Sheriff Cassidy's change in the overtime policy is also in dispute.  Thus, a reasonable jury could find that Plaintiff was denied overtime opportunities, and thus, denied opportunities for compensation, due to his filing of protected petitions.

Accordingly, the Court will allow Plaintiff's Petition Clause claim based on a denial of overtime opportunities to proceed.

**9.      Calling Plaintiff "Rat" and "Piece of Shit"**

Plaintiff contends that in February 1999, he was ordered to attend a morning roll call, which was rare because he normally must prepare for morning court at the CJP.  McGovern Certification at ¶ 25.  Plaintiff attended the roll call.  At this meeting, Sheriff Cassidy referred to an unnamed sheriff's officer as a "rat" for informing the press that various Jersey City Police officers and Hudson County Sheriff's officers threw a pizza party for John Chiusolo, an off-duty JCPD officer who had been convicted of aggravated assault that caused the death of an individual.  Id. at ¶ 25-26.  Plaintiff claims that Sheriff Cassidy held up the news article about the pizza party and stood directly in front of Plaintiff, screaming: "this person is a rat; we have a rat; this person would do anything to get back at me; how could you people work with this person; this person is a piece of shit and I don't know how you people could work with him."  Id. at ¶ 26.  Sheriff Cassidy admits to having the roll call and to informing the entire group that "apparently we have someone amongst us who is a rat," see Cassidy Deposition (Jan. 3, 2002) at 42:11-23.  However, he claims that he did not know who the "rat" was and did not direct his comments at

Plaintiff.  See Cassidy Deposition (Jan. 3, 2002) at 42:1-4.  Following this roll call incident,

Sheriff's Officer Fisher placed a key chain resembling a wedge of cheese on the x-ray machine in

the CJP, which remained there for weeks.  Id. at ¶ 27.  Plaintiff claims he was not permitted to

remove the key chain.  Id.  Defendants claim that these incidents do not rise to the level of

actionable First Amendment adverse employment actions.

 Courts have held that an employee's First Amendment rights are not violated where the

employer's alleged retaliatory acts were "criticism, false accusations, or verbal reprimands."  See,

e.g., McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006); Brennan, 350 F.3d at 419.  However, the

Third Circuit has indicated that  a "continuing course of conduct" or the "cumulative impact of

retaliatory acts" may become actionable under section 1983 even if "some or all of the conduct

complained of would be *de minimus* by itself or if viewed in isolation."  See Brennan, 350 F.3d

at 419 n.16, 422 n.17.

 Although Plaintiff failed to establish the requisite causal nexus with respect to his

Petition Clause allegations against Sheriff Cassidy for terminating his participation in the pension

plan, failing to provide the requisite wage parity pay, transferring Plaintiff from CJP, refusing to

transfer Plaintiff from CJP, increasing the supervision of Plaintiff's work, forcing Plaintiff to

qualify for the use of his firearm in the presence of Jersey City Police officers, and denying

Plaintiff the opportunity for off-duty work, this Court found above that Plaintiff made the

requisite showing of a constitutional violation with respect to his claim that Sheriff Cassidy

denied him overtime opportunities.  When viewed cumulatively with Plaintiff's denial of

overtime opportunities claim, Sheriff Cassidy's comments, which Plaintiff says were directed

solely at him during the roll call, as well as the environment the Sheriff allowed to persist in the

office (i.e., the hanging of the cheese key chain at Plaintiff's CJP post), which would otherwise be *de minimus*, see McKee, 436 F.3d at 171, constitute an actionable retaliation claim based on the Sheriff's course of conduct.  See Brennan, 350 F.3d at 422 n. 17 ("We reiterate, however, that we are not suggesting that repeated incidents of what might otherwise be trivial 'harassment' can never be actionable.  The cumulative impact of retaliatory acts may become actionable even though the actions would be *de minimus* if considered in isolation.").

Thus, the Court finds that these Petition Clause allegations may be considered with the denial of overtime claim, as the basis for a cumulative First Amendment retaliation claim.

**B.**      **Section 1983 Conspiracy Claim**

Plaintiff alleges that Sheriff Cassidy conspired with the other defendants in this case to retaliate against Plaintiff for the filing of his protected petitions.  To establish a conspiracy to violate his rights under 42 U.S.C. § 1983, Plaintiff must show (1) the existence of a conspiracy that involves state action; and (2) a deprivation of civil rights by a party to the conspiracy which is in furtherance of the conspiracy.  See, e.g., Marulli v. Alloy, No. 04-2869, 2006 WL 2772553, at *8 n.10 (D.N.J. Sept. 23, 2006).

The Court herein denies Defendants' motion for summary judgment on the section 1983 conspiracy claim and will allow such claim to proceed.  Plaintiff claims that on the night of the Park Tavern incident, Patricia Cassidy told him: "Forget about this.  You know who I am.  You know who my father is.  You better fu_king forget about it.  If you charge them, they are going to charge you.  It's going to the prosecutor's office.  It is going to get downgraded, and we're going to get you."  McGovern Certification at ¶ 11.  Plaintiff has created a genuine issue of material fact as to whether Sheriff Cassidy and his daughter, Patricia, conspired to violate Plaintiff's First

Amendment rights.  Viewing Plaintiff's assertions as true, subsequent to Patricia Cassidy's

threats of retaliation (which she denies), her father retaliated against Plaintiff in violation of his

First Amendment rights as discussed above.[15]

Thus, the Court finds that Plaintiff has created a genuine issue of material fact with

respect to this conspiracy claim.  Defendants' motion for summary judgment on Plaintiff's

section 1983 conspiracy claim is denied.

## C.   <u>Qualified Immunity</u>

Sheriff Cassidy asserts that he is entitled to qualified immunity from Plaintiff's claims.

Qualified immunity protects public officials from lawsuits seeking damages arising out of their

official actions.  See, e.g., <u>Thomas v. Independence Twp.</u>, 463 F.3d 285, 291 (3d Cir. 2006).

Sheriff Cassidy is entitled to qualified immunity from Plaintiff's Petition Clause claim unless his

conduct violated a clearly established constitutional right of which a reasonable person would

have known.  See, e.g., <u>Larsen v. Senate of the Commw. of Pennsylvania</u>, 154 F.3d 82, 86 (3d

Cir. 1998).  The burden is on the Plaintiff to establish that the constitutional right at issue was

"clearly established" as the courts have defined that term.  See, e.g., <u>Sherwood v. Mulvihill</u>, 113

F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a

motion for summary judgment, the plaintiff bears the initial burden of showing that the

defendant's conduct violated some clearly established statutory or constitutional right.").

Based on this standard, the Court must first examine whether Plaintiff has established a

_____

[15]  The Court does not construe Plaintiff's section 1983 conspiracy claim to include any
other individuals besides the Sheriff and Patricia Cassidy.  Plaintiff fails to tie any of the former
defendants in this case, or any other persons, to an agreement to unconstitutionally retaliate
against him.

violation of his constitutional rights.  See, e.g., Larsen, 154 F.3d at 86 ("when a qualified

immunity defense is raised a court first should determine whether the plaintiff has asserted a

violation of a constitutional right at all").  As indicated above, Plaintiff asserted the violation of a

constitutional right and has raised a genuine issue of material fact as to whether Sheriff Cassidy

violated his First Amendment Petition Clause rights in the manner discussed above.

The Court must next determine whether the constitutional right at issue is clearly

established.  See, e.g., id. at 87 (indicating that if a court finds that plaintiff has asserted a

violation of a constitutional right, the court must then consider whether such right was clearly

established).  For a right to be clearly established for the purposes of qualified immunity, " '[t]he

contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right.' "  See, e.g., Wilson v. Layne, 526 U.S. 603, 615 (1999)

(quotations omitted); McKee, 436 F.3d at 171.  In other words, " 'there must be sufficient

precedent at the time of the action, factually similar to the plaintiff's allegations, to put [the]

defendant on notice that his or her conduct is constitutionally prohibited.' "  McKee, 436 F.3d at

171 (quoting McLaughlin v. Watson, 436 F.3d 566, 572 (3d Cir. 2001)).  Thus, this inquiry

" 'must be undertaken *in light of the specific context of the case*, not as a broad general

proposition.' "  Id. (quotation omitted).

The Court finds that Plaintiff has failed to meet his burden of demonstrating that his right

to be free from a denial of overtime opportunities, as well as from harassing comments, in

retaliation for the exercise of his Petition Clause rights under the First Amendment, was clearly

established at the time of the purported retaliatory acts.  The case law Plaintiff cites in his brief

supports the proposition that the right to be free from retaliation for filing petitions protected by

the First Amendment is clearly established.  See San Filippo, 30 F.3d *passim*; Bieregu v. Reno, 59 F.3d 1445, 1453 (3d Cir. 1995).[16]  However, this is a broad proposition.  Plaintiff provides no case law to demonstrate that there was sufficient precedent at the time of the purported retaliatory actions, which was *factually similar* to Plaintiff's allegations, to put Sheriff Cassidy on notice that his conduct was *constitutionally prohibited*.  Specifically, the Third Circuit held in McKee v. Hart, 436 F.3d 165, 173 (3d Cir. 2006), that the right to be free from retaliation for the exercise of one's First Amendment Petition Clause rights, where such retaliation is based on the cumulative impact of retaliatory acts that would be *de minimus* by themselves or if viewed in isolation, see Brennan, 350 F.3d at 419 n.16, was not clearly established prior to the Brennan decision in 2003.  The alleged retaliatory acts in this matter occurred before that date—the Sheriff purportedly directed that Plaintiff be denied overtime in 1998 and his comments were made in 1999.  Further, Plaintiff must demonstrate that sufficient precedent existed, at the time Plaintiff was denied overtime, to put Sheriff Cassidy on notice that his denial of overtime opportunities to Plaintiff, in retaliation for Plaintiff's filing of petitions, was *constitutionally prohibited*.  Plaintiff provides to no authority in this regard.  Plaintiff's conspiracy claim against Sheriff Cassidy—which is based on this same activity—likewise fails.

Thus, the Court grants Sheriff Cassidy qualified immunity from Plaintiff's section 1983

---

[16]  Plaintiff also cites to Pro v. Donatucci, 81 F.3d 1283 (3d Cir. 1996) for the proposition that the Plaintiff's rights were clearly established.  See Plaintiff's Brief at pp. 14-15.  The Pro Court specifically states that the Petition Clause was not implicated in that case.  See Pro, 81 F.3d at 1297 n.2 ("Pro was a potential witness, not a litigant, and the right to petition is therefore not implicated in this case.").  Thus, the Court fails to understand the relevance of this case.

28

Petition Clause claim.[17]

**D.      Municipal Liability**

Plaintiff argues that Hudson County and the Sheriff's Office are liable for the
unconstitutional actions of Sheriff Cassidy.  In particular, Plaintiff claims that Sheriff Cassidy is
the final policymaker for the County pursuant to N.J.S.A. §§ 40A:9-117, 40A:9-117.6, thus
imposing liability on Hudson County and the Sheriff's Office for his actions.  The Sheriff
actually admitted to being the final policymaker within the Sheriff's Office during his deposition
testimony.  See Cassidy Deposition (July 30, 2001) at 22:7-24.  Hudson County and the Sheriff's
Office argue that Plaintiff's municipal liability claims are not cognizable because Plaintiff has
not identified a municipal policy or custom which caused his constitutional injuries.

Municipal bodies, such as Hudson County and the Sheriff's Office, may not be held liable
under section 1983 under a theory of respondeat superior.  See, e.g., Monell v. Dep't of Social
Services of the City of New York, 436 U.S. 658, 690-91 (1978); Brennan v. Norton, 350 F.3d
399, 427 (3d Cir. 2003).  Thus, the County and the Sheriff's Office cannot be held liable for
merely employing an individual who commits a constitutional violation.  Although municipal
liability must generally be premised on a municipal policy or custom which caused Plaintiff's
constitutional deprivation, see, e.g., Monell, 436 U.S. at 694, or on the municipal entity's failure
to adequately train its employees, see, e.g., Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir.
1997), municipal liability may stem from a single act performed by an individual with "final
policymaking authority" for the municipal entity.  See, e.g., City of St. Louis v. Praprotnik, 485

_____

[17]  Consequently, Sheriff Cassidy is also entitled to qualified immunity on Plaintiff's
Petition Clause claim based on a violation of the New Jersey Constitution.

29

U.S. 112, 123-24 (1988); see also Brennan, 350 F.3d at 427-28 (stating that a municipal entity

may be liable under section 1983 for a decision by a final policymaker, i.e., a decision which is

not subject to review); Martinez v. Scerbo, No. 06-0819, 2006 WL 2583448, at *3 (D.N.J. Sept.

7, 2006) (stating that acts of a decision-maker with final authority to establish municipal policy

may subject the municipality to section 1983 liability).[18]

     Defendants do not appear to dispute that Sheriff Cassidy is a policymaker and that

Hudson County and the Sheriff's Office can be held liable for his conduct. Instead, in their reply

brief, Defendants persist on arguing that Plaintiff has not established a municipal custom or

policy under Monell; however, this is not the theory of municipal liability that Plaintiff is

proceeding under.

     The question of whether Sheriff Cassidy is an individual with final policymaking

authority for the county involves an analysis of the Sheriff's official functions and duties under

state law.  See McMillian v. Monroe County, 520 U.S. 781, 786-87 (1997); Cacciatore v. County

of Bergen, No. 02-1404,  2005 WL 3588489, at *4 (D.N.J. Dec. 30, 2005).  The Court refuses to

do Defendants' work for them and engage in this analysis itself.   Since Plaintiff's argument that

Sheriff Cassidy is a policymaker for the Sheriff's Office and Hudson County is unopposed,

summary judgment on this issue is denied and Plaintiff's claims against Hudson County and the

---

[18]  Hudson County and the Sheriff's Office may be liable for the unconstitutional actions
of Sheriff Cassidy even though the Sheriff is immune from suit.  See, e.g., Owen v. City of
Independence, 445 U.S. 622, 638 (1980); Mason v. Stock, 955 F. Supp. 1293, 1304 n.9 (D. Kan.
1997) ("A finding that an officer is entitled to qualified immunity because the officer's conduct
did not violate the law is equivalent to a decision on the merits of the claim and precludes the
imposition of any municipal liability.  On the other hand, when qualified immunity is predicated
on the basis that the law is not clearly established, the corresponding claim against a municipality
may proceed.").

Sheriff's Office, based on municipal liability for the First Amendment retaliation and conspiracy claims that still exists in this case, remain.

**V.**     **Conclusion**

In conclusion, for the foregoing reasons, the Court grants in part and denies in part Defendants' summary judgment motion.   Sheriff Cassidy is immune from Plaintiff's remaining allegations against him and thus, is terminated as a party to this case.  However, Plaintiff's claims against municipal entities Hudson County and the Sheriff's Office are still viable.  Plaintiff's remaining claims against Hudson County and the Sheriff's Office are as follows:  (1) municipal liability for Sheriff Cassidy's retaliation against Plaintiff for exercising his Petition Clause rights under the First Amendment and the New Jersey Constitution by denying Plaintiff overtime opportunities and making harassing comments about Plaintiff; and (2) municipal liability for Sheriff Cassidy's involvement in a conspiracy with Patricia Cassidy to violate Plaintiff's Petition Clause rights pursuant to the First Amendment and 42 U.S.C. § 1983.  An appropriate order accompanies this opinion.


Date:   September 27, 2007                                       /s/ Jose L. Linares
_____     United States District Judge

31